HOWARD B. GOLDS, Bar No. 112626
Howard.Golds@bbklaw.com
CYNTHIA M. GERMANO, Bar No. 151360
Cynthia.Germano@bbklaw.com
DANIELLE G. SAKAI, Bar No. 210316
Danielle.Sakai@bbklaw.com
BEST BEST & KRIEGER LLP
3750 University Avenue, Suite 400
P.O. Box 1028
Riverside, CA 92502
Telephone: (951) 686-1450
Telecopier: (951) 686-3083

Attorneys for Defendant
CITY OF VICTORVILLE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL FRANCO; ART KING; DALE PRIBER; DAVE BOLESWORTH; DAVE MATHIS; DVE WETZEL; DAVE WHEATON; HEATH HAMMONDS; JOHN BOROWSKI; MARTY BROWN; PETE LAWSON; STANLEY HANSON; STEVE SILLINGS; TIM PORTER; CLIFF BRACKIN; DAN PIEDLOW; DARRELL WALTMAN; DAVE NEWMAN; JAMES GUFFEY; JAMES PERATT; JEFF ALEXY; JESSE MARTINEZ; JORGE GALLARDO; MICHAEL OUZTS; ROBERT BROCKETTL; SEAN SOLIS; SITHA TAN; STEVE CASTAGNOLA; WILLIAM GUTIERREZ; ANDY LUJAN; BRANDON FOULKS; FRENT CANNON; CARLOS ESTRELLA; DANIEL PINTO; DENNIS JONES; JOHN MARTIN; JONATHAN REECE; JOSE CRUZ; MIKE CADDELL; RICHARD LYONS; ROBERT MYERS; ROBERT VILLARINO; TIM PRONENKO; TRAVIS AGUIERRE; VINCENT MARQUEZ; TRENT BLANCHARD; BRIAN WELLS, <br><br>Plaintiffs, | Case No. CV 07-07670 SVW (Ex) <br><br> DEFENDANT CITY OF VICTORVILLE'S TRIAL BRIEF <br><br> Date:      February 3, 2009 <br> Time:      8:30 a.m. <br> Judge:     6 |

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

1

2      v.

3   CITY OF VICTORVILLE, a
    municipal corporation;
4   VICTORVILLE FIRE
    DEPARTMENT; and DOES 1
5   through 1 inclusive,

6              Defendants.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

1

2

# TABLE OF CONTENTS

**Page**

1.  INTRODUCTION...................................................................................1

2.  STATEMENT OF FACTS ....................................................................3

3.  LEGAL ANALYSIS ..............................................................................4

    A.    Plaintiffs' Have Not Suffered Any Damages ................................4

    B.    Plaintiffs Are Not Entitled To Liquidated Damages ....................9

4.  CONCLUSION ....................................................................................11

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

*Abbey v. City of Jackson,*
   883 F.Supp. 181 (E.D. Mich. 1995) ................................................................ 7, 8

*Alvarez v. IBP, Inc.,*
   339 F.3d 894 (9th Cir. 2003) .............................................................................. 10

*Bratt v. County of Los Angeles,*
   912 F.2d 1066 (9th Cir. 1990) ........................................................................... 10

*Brooks v. Village of Ridgefield Park,*
   185 F.3d 130 (3d Cir. 1999) .............................................................................. 10

*Craig v. Far West Engineering Co.,*
   265 F.2d 251 (9th Cir. 1959) ............................................................................. 10

*Foster v. Irwin,*
   258 F.Supp. 709 (E.D. LA 1966) ................................................................ 10, 11

*Harold Levinson Assocs. v. Chao,*
   37 Fed. Appx. 19, 22 (2nd Cir., 2002) ............................................................... 8

*Herman v. Fabri-Centers of America,*
   308 F.3d 580 (6th Cir., 2002) .............................................................................. 8

*Imada v. City of Hercules,*
   138 F.3d 1294 (9th Cir. 1998) ............................................................................. 4

*Kohleheim v. Glynn County,*
   915 F.2d 1473 (11th Cir. 1990) .................................................................. 6, 7, 8

## FEDERAL STATUTES

29 C.F.R. § 553.226 ............................................................................................... 4

29 U.S.C. § 200 ...................................................................................................... 2

29 U.S.C. § 201 ...................................................................................................... 3

29 U.S.C. § 207 ...................................................................................................... 6

29 U.S.C. § 207(e) ................................................................................................. 6

29 U.S.C. § 207(h) ...................................................................................... 2, 5, 6, 8

29 U.S.C. § 216 ...................................................................................................... 9

29 U.S.C. § 260 .................................................................................................... 10

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

1

## TRIAL BRIEF

2

3    ### 1.    INTRODUCTION

4        Plaintiffs Al Franco, et al. (collectively, "Plaintiffs") were employed as

5    firefighters by defendant City of Victorville ("City") at the Victorville Fire

6    Department ("Department").

7

8        The only issue in this lawsuit is whether Plaintiffs are entitled to $1,950.50 in

9    liquidated damages because of the manner in which the City calculated overtime

10    pay.  While the City acknowledges that it did not incorporate longevity pay into the

11    calculations of base rate for overtime, in reality, because of the City's overpayment

12    of overtime pay, the Plaintiffs suffered no damages.

13

14        It is undisputed that as matter of law, the City was entitled to offset any

15    underpayments of "stability/longevity pay" and "out of class pay" with actual

16    overpayments Plaintiffs received for overtime.  The overpayments were

17    significantly higher than the underpayments.  Specifically, pursuant to FLSA

18    regulations, the City's firefighters are to be paid overtime if they exceed 204 hours

19    of work during a 27 day period.  It is typical that during any particular 27 day

20    period, there are holidays or the firefighters take vacation or sick days so they often

21    do not work the full 204 hours of regular time. Nonetheless, the City had been

22    paying overtime whenever the total of actual worked time, plus any holiday, sick

23    and/or vacation time used during any 27 day period, exceeds 204 hours.  In

24    actuality, the firefighters should have received overtime only when their actual

25    work time exceeded 204 hours and the City should not have given them credit for

26    holiday/sick/vacation time in determining whether the 204 hour limit had been

27    met.

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

1    Accordingly, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

2  § 200 *et seq.*, Section 207(h)  (29 U.S.C. § 207(h)), the City has a right to offset any

3  underpayment due to the failure to include longevity/out-of-class pay in the base

4  rate because of its overpayments as described above.

5

6    The City's calculation determined that if all overpayments were offset

7  against the failure to include "stability/ longevity pay" or "out of class pay", the

8  Plaintiffs were not owed anything, and in fact arguably owed the City money.

9  Alternatively, if the offset was only permitted on a single pay period basis, the City

10  owed the Plaintiffs only $1,950.50.  Plaintiffs did not contest these calculations.  In

11  order to avoid a contentious and costly legal battle over as part of an intended

12  settlement of all claims the City tendered $1,950.50 to the Plaintiffs.  The Plaintiffs

13  accepted the amount, but then backed out of the settlement because their attorneys'

14  wanted significant attorneys' fees.  The City contends that all overpayments should

15  be offset against the underpayments and as such the Plaintiffs have not suffered any

16  damages and are not entitled to the $1,950.50 in liquidated damages they seek.

17

18    Alternatively, because the City acted in good faith and had reasonable

19  grounds for believing that it was complying with the FLSA, it would be unjust to

20  order the City to pay liquidated damages.  The City was not engaged in a practice of

21  intentionally trying to manipulate the Plaintiffs from receiving the pay they legally

22  were entitled to, in fact that City was overpaying the Plaintiffs.  As such, Plaintiffs

23  would receive a windfall if liquidated damages were awarded.

24

25    This matter is before the Court for Trial because Plaintiffs' Attorneys' were

26  dissatisfied with the agreement reached between the City and the Victorville

27  Professional Firefighters Association (the firefighter labor organization).  The City

28  and the Victorville Professional Firefighters Association sought to resolve this

1   dispute as part of the transferring of all Victorville fire protection services out to the
2   County of San Bernardino.  However, that resolution was unsatisfactory to
3   Plaintiffs' counsel who were hoping to parlay this case regarding less than $2,000
4   into a six figures payout in attorneys' fees.
5
6   ## 2.    STATEMENT OF FACTS
7       Plaintiffs filed a Complaint alleging violation of the Fair Labor Standards
8   Act, 29 U.S.C. §§ 201, et. seq ("FLSA") against Victorville on or about November
9   26, 2007.  The Complaint alleged that Victorville violated the FLSA when it
10  supposedly failed to provide Plaintiffs with compensation or overtime pay for
11  voluntarily attending a training session for Airport Rescue and Fire Fighting
12  certifications ("ARFF").[1]  In addition, in one paragraph of the Complaint (¶17),
13  Plaintiffs alleged a series of other alleged FLSA violations including an alleged
14  failure by Victorville to include "stability/longevity pay" and temporary out-of-
15  class additional pay in the Plaintiffs' overtime calculation.
16
17      Despite the fact that the vast bulk of effort expanded on this case involved
18  the issue of the ARFF training, on January 5, 2009, as part of the Plaintiffs'
19  Memorandum of Contentions of Law and Fact, Plaintiffs' abandoned the claims
20  related to the ARFF training.
21
22      The abandonment of this claim is likely because Victorville had a
23  meritorious defense to this claim.  Specifically, the FLSA provides that
24  "[a]ttendance outside of regular working hours at specialized or follow-up training,
25  which is required by law for certification of public and private sector employees
26  within a particular governmental jurisdiction (e.g., certification of public and
27
28  ---
    [1] At the relevant times for this litigation, Victorville provided fire protection services for the
    Southern California Logistics Airport (the former George Air Force Base).

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

Best Best & Krieger LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

1  private emergency rescue workers), does not constitute compensable hours of work

2  for public employees within that jurisdiction and subordinate jurisdictions." 29

3  C.F.R. § 553.226.  Thus, Victorville employees who were off-duty and not assigned

4  to the airport fire station (essentially, all of the Plaintiffs herein) were not entitled to

5  compensation during the training or during associated travel time to the training.

6  See, e.g., *Imada v. City of Hercules*, 138 F.3d 1294 (9th Cir. 1998).

8      As a result of Plaintiffs' abandonment of the vast majority of their claim, the

9  only issue that remains relates to the "stability/longevity pay" and "out of class

10  pay."

12      As part of the meet and confer process related to the transfer of fire

13  protection services to the County of San Bernardino (the "County"), the City and

14  the Victorville Professional Firefighters Association (representing the Plaintiffs)

15  agreed that the City would perform a calculation of whatever was allegedly owed.

16  That calculation was completed and sent to Plaintiffs' counsel on August 20, 2008.

17  Depending upon the interpretation of competing legal authorities, as explained in

18  detail below, Plaintiffs were either owed a grand total of $1,950.50, or in fact, they

19  were not entitled to any additional compensation.  Plaintiffs did not dispute any of

20  the City's calculation.  As part of the intended global settlement, the City tendered

21  the Plaintiffs' $1,950.50 related to the "stability/ longevity pay" and "out of class

22  pay."  Plaintiffs accepted the $1,950.50.  However, Plaintiffs have since reneged on

23  the settlement and seek to go to trial related to their claim for $1,950.50 in

24  liquidated damages.

26  3.    **LEGAL ANALYSIS**

27      A.    **Plaintiffs' Have Not Suffered Any Damages**

28      The City acknowledges that it did not incorporate longevity or out-of-class

1 pay into the calculations of Plaintiffs' base rate for overtime during the relevant

2 time period.  However, it is undisputed that the City is entitled to offset any

3 underpayment resulting therefrom based on the fact that it actually overpaid

4 Plaintiffs for overtime.

5

6    The City's firefighters are to be paid overtime if they exceed 204 hours of

7 work during a 27 day period.  It is typical that during any particular 27 day period,

8 there are holidays or the firefighters take vacation or sick days so they often do not

9 work the full 204 hours of regular time. Nonetheless, the City had been paying

10 overtime whenever the total of actual worked time, plus any holiday, sick and/or

11 vacation time used during any 27 day period, exceeds 204 hours.  In actuality, the

12 firefighters should have received overtime only when their actual work time

13 exceeded 204 hours and the City should not have given them credit for

14 holiday/sick/vacation time in determining whether the 204 hour limit had been

15 met.

16

17    The FLSA specifically allows an employer to offset owed overtime

18 compensation by any amount of overtime overpayment.  The FLSA statutory

19 provision governing offset is located at 29 U.S.C. § 207(h) ("Section 207(h)"),

20 which states:

21

22    (h)   Credit   toward   minimum   wage   or   overtime
23 compensation of amounts excluded from regular rate
     (1) Except as provided in paragraph (2), sums excluded
24 from the regular rate pursuant to subsection (e) of this
     section shall not be creditable toward wages required under
25 section 206 of this title or overtime compensation required
     under this section.
26    (2) Extra compensation paid as described in paragraphs (5),
     (6), and (7) of subsection (e) of this section shall be
27 creditable toward overtime compensation payable pursuant
     to this section.

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

As referenced within Sec. 207(h), the kinds of payment in paragraphs 5-7 of subsection (e) of Section 207, are:

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day of workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

Although the issue has not been decided by the Ninth Circuit, there is a split in case law as to whether the offset provided by Section 207(h) allows an employer to offset all overtime underpayments caused by an employer's failure to adhere to FLSA with all overtime overpayments pursuant to Section 207(h)'s inclusion of Section 207(e)(5).

For instance, in the *Kohleheim v. Glynn County,* 915 F.2d 1473 (11th Cir. 1990), seventy-one (71) fire fighters and emergency medical personnel brought suit against their employer, Glynn County, alleging in part that the county failed to calculate "regular pay" (and, thus, overtime wages) pursuant to Section 207(e)(5) of the FLSA. The county admitted that it failed to completely adopt FLSA standards

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

1  following the 1985 amendments which made the FLSA applicable to state and local

2  governments. *Id.* at 1481. The result was that the county continued to determine

3  overtime for its fire fighters by asserting an artificial hourly rate as the "regular

4  pay." The county determined this rate by dividing the annual salary as stated in the

5  pay scale in the personnel ordinance by the number of yearly-compensated hours,

6  which was 2928 hours. *Id.* at p. 1481, fn. 1. In some cases, this "2928" calculation

7  was less than the overtime that would have been due under FLSA, but in some

8  cases it was more. Glynn County sought to offset the overtime shortfalls created by

9  its procedures by the amounts paid in excess of what was required under the FLSA.

10  After the district court refused to allow the offset, the county appealed. The Court

11  of Appeal reversed the trial court, stating that "the county should be allowed to set

12  off *all* previously paid overtime premiums, not just those equal to or greater than 1

13  1/2 times the regular rate, against overtime compensation found to be due and

14  owing during the damages phase of the trial." Id. (emphasis added).

15

16      Similarly, in *Abbey v. City of Jackson,* 883 F.Supp. 181 (E.D. Mich. 1995),

17  pursuant to its collective bargaining agreement with the union, the city paid its fire

18  fighters a fixed premium rate of pay for overtime. *Id.* at 183. This rate was not

19  calculated pursuant to FLSA. The rate – as compared to what should have been

20  paid pursuant to FLSA – resulted in some instances of underpayment and other

21  instances of overpayment. The plaintiffs argued that any offset under Section

22  207(h) could only be used in the same work period as the alleged deficiency. *Id.* at

23  p. 186. The court disagreed. The court not only ruled that the offset applied, but

24  also ruled that pursuant to Section 207(h) the city could offset the overpayments

25  against all overtime payments owed, whether in the same pay period or not. *Id.* at

26  p. 187.

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

1       While some Court have taken the position that because the FLSA requires the

2 prompt payment of wages due, an employer may only offset an underpayment of

3 overtime against an overpayment when both occur within the same pay period,

4 See, *Harold Levinson Assocs. v. Chao*, 37 Fed. Appx. 19, 22 (2nd Cir., 2002) and

5 *Herman v. Fabri-Centers of Am.*, 308 F.3d 580, 590 (6th Cir., 2002), those cases

6 should not be applied here.

7

8       This Court should apply the holding in *Kohleheim* and *Abbey*.  As the *Abbey*

9 court held after conducting a thorough examination of the FLSA provisions and the

10 policies behind FLSA, "[f]orcing an employer, who has given a premium rate of

11 pay for overtime, to forego the receipt of credit and to pay additional overtime

12 punishes the employer without regard to whether it was attempting to avoid its

13 obligation to adequately compensate employees for extra hours worked." *Id.* at

14 187.  The *Abbey* court further found that "there is a clear congressional intent to

15 allow an employer to offset premium rates of pay against overtime owed. 29 U.S.C.

16 § 207(h). ... and .... [if the offset was limited to a particular pay period], plaintiffs

17 would receive a windfall and the purposes and goals of the statute would not be

18 served." *Id.* at 188.  The court reasoned that defendants may thus offset all

19 underpayment against all overpayments. *Ibid.*

20

21       The *Abbey and Kohleheim* approach takes into account the purpose of the

22 FLSA which is to ensure that employees receive the compensation to which they

23 are legally entitled.  Taking a contrary approach would ensure a windfall for

24 employees at the expense of the employer, and here the tax payers of the City.

25 While the contrary approach may be appropriate where there is evidence that the

26 employer was attempting to avoid its obligation to adequately compensate

27 employees, when, as is the case here the underpayment was simply the result of an

28 error in a computer program, and the Plaintiffs have already received adequate

1   compensation, the employer should be entitled to offset the underpayments against

2   all overpayments.

3

4   　　　Plaintiffs will likely argue that by tendering the payment of the $1,950.50 is a

5   concession of the damages suffered.  That is simply not the case.  The City tendered

6   pursuant to its belief that the parties had entered into a valid settlement agreement.

7   As explained in the City's successful opposition to the motion for attorneys' fees,

8   the City entered into what it believed was a nuisance settlement in order to avoid

9   the costly fight we are now experiencing over $1.950.50.  That obviously

10  unconsummated settlement did not include an admission of liability or an

11  agreement to waive its legal position if the Plaintiffs (and their counsel)

12  subsequently reneged on that agreement after the payment was tendered.  Despite

13  the fact that Plaintiffs are insisting on trial of this matter, they have failed to return

14  the payment.

15

16  　　　However, because Plaintiffs have not, and cannot, contest the calculations

17  performed by the City or the conclusion that overpayments exceed underpayments,

18  Plaintiffs have not suffered any damaged and are not entitled to any additional

19  compensation, let alone liquidated damages under Section 216(b).[2]

20

21  **B.** **Plaintiffs Are Not Entitled To Liquidated Damages**

22  　　　As set forth above, Plaintiffs have not suffered any damaged and therefore

23  are not entitled to liquidated damages.  However, even assuming Plaintiffs damages

24  were $1950.50, they should not be awarded liquidated damages.

25

26

27

28

---

[2]   Liquidated damages are to be set in an amount equal to the amount of damages the Plaintiff has
suffered.  29 U.S.C. § 216(b).

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

1    "[I]f the employer shows to the satisfaction of the court that the act or

2    omission giving rise to such action was in good faith and that he had reasonable

3    grounds for believing that his act or omission was not a violation of the Fair Labor

4    Standards Act …the court may, in its sound discretion, award no liquidated

5    damages." 29 U.S.C. § 260.  Whether or not liquidated damages should be

6    awarded lies within the sound discretion of the Court.  *Craig v. Far West*

7    *Engineering Co.*, 265 F.2d 251, 261, fn 14 (9th Cir. 1959.)

8

9         To satisfy the Section 260 good faith defense, an employer must prove both

10   subjective good faith and objective reasonableness.  See, *Alvarez v. IBP. Inc.*, 339

11   F.3d 894, 910 (9th Cir. 2003).  Subjective good faith requires proof that the

12   employer had an honest intention to ascertain and follow the dictates of the FLSA.

13   *See, Bratt v. County of Los Angeles*, 912 F.2d 1066, 1072 (9th Cir. 1990). The

14   reasonableness of the employer's conduct is determined by an objective standard; to

15   satisfy the objective standard, the employer must act as a "reasonably prudent

16   [person] would have acted under the same circumstances."  *Brooks v. Village of*

17   *Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999).

18

19        Under Section 260 liquidated damages should not be awarded against an

20   employer for his failure to comply with wage or hour provisions of Fair Labor

21   Standards Act where there is no bad faith, malice, or oppression on such employer's

22   part.  *Foster v. Irwin*, 258 F. Supp. 709, 712 (E.D. LA 1966).  In *Foster*,  the Court

23   determined that liquidated damages would be unjust when the plaintiffs only

24   recovered nominal amounts and there was no evidence of malice.  Further because

25   plaintiffs testified that their pay had actually gone down as a result of strict FLSA

26   compliance, and there was at least circumstantial evidence of overpayment, the

27   court used its discretion and declined to award any liquidated damages against the

28   employer.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

1      Here, the evidence is undisputed that the City did not intentionally exclude

2   "stability/longevity pay" or "out of class pay" from Plaintiffs' compensation.  The

3   City relied upon the proprietary software that it used for payroll and was under the

4   impression that Plaintiffs' were being appropriately compensated for all time

5   worked at the appropriate rate of pay.  There certainly was no malice on the part of

6   the City.  In fact, just as in *Foster* not only are the amounts in controversy (less than

7   $2,000) nominal, but in actuality, the City was overpaying Plaintiffs.  It would thus

8   be unjust, and provide Plaintiffs a windfall, to award liquidated damages.

9

10      **4.    CONCLUSION**

11      Defendant City of Victorville respectfully requests that the Court find that

12   Plaintiffs have incurred no damages and therefore are not entitled to any additional

13   compensation or liquidated damages as a matter of law.  Alternatively, the City

14   respectfully requests that the Court find that the City acted in good faith and that it

15   had reasonable grounds for believing that its acts were not a violation of the Fair

16   Labor Standards Act and therefore award no liquidated damages to Plaintiffs.

17

18   Dated:    January 23, 2009.                    BEST BEST & KRIEGER LLP

19

20   By:  *Danielle Sakai*
                                             HOWARD B. GOLDS
21                                           CYNTHIA M. GERMANO
                                             DANIELLE G. SAKAI
22                                           Attorneys for Defendant
                                             CITY OF VICTORVILLE and
23                                           CITY OF VICTORVILLE FIRE
                                             DEPARTMENT

24

25

26

27

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
3750 UNIVERSITY AVENUE, SUITE 400
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502