1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10
AL FRANCO, et al.,                  )    CV 07-7670 SVW (Ex)
11                                   )
                    Plaintiffs,      )    ORDER GRANTING PLAINTIFFS'
12                                   )    MOTION FOR AWARD OF LIQUIDATED
          v.                         )    DAMAGES AND GRANTING IN PART
13                                   )    PLAINTIFFS' MOTION FOR
CITY OF VICTORVILLE, et al.,         )    REASONABLE ATTORNEY FEES [64]
14                                   )
                    Defendants.      )
15   _____)
                                     )
16
17
18
19
20   **I.   Introduction**

21        This motion is the latest chapter in a long-running saga involving

22   claims brought by 47 Victorville firefighters against the City of

23   Victorville and the Victorville Fire Department.  Ostensibly, this is a

24   case about the City's failure to pay proper wages to the firefighters.

25   In reality, though, the bulk of the labor devoted to this case has been

26   driven by Plaintiffs' counsel's desire to be awarded attorneys' fees

27   and Defendants' desire to avoid paying those fees.  The truly

28   remarkable part of this case is that it is has lingered on for nearly

two years even though Defendants have freely admitted that they owe Plaintiffs the money to which Plaintiffs are entitled. Months have passed and tens of thousands of dollars have been expended in a dispute that essentially centers on Plaintiffs' counsel's attempt to receive statutory attorneys' fees.

It is finally time to put this case to rest. The Court GRANTS Plaintiffs' Motion for Award of Liquidated Damages. The Court also GRANTS Plaintiffs' Motion for Attorney Fees -- but only in part. Nothing has come easy in this dispute, and the present Motion is no exception.

## II. BACKGROUND

By now, the Court and the parties are intimately familiar with the underlying facts. The Court will recount only the essential portions of the factual and procedural history.

The case was originally filed in November of 2007. (See Complaint, docket no. 1). Plaintiffs claimed that they were entitled to unpaid compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., on account of 1) Defendants' failure to pay Plaintiffs for time spent on an airport-protection training exercise (the so-called "ARFF" claim, as the parties insist on referring to it -- shorthand for "Airport Rescue and Fire Fighting" certification), and 2) Defendants' failure to properly include "stability/longevity pay" and "out-of-class pay" in the base rate upon which Plaintiffs' overtime pay was calculated. (Compl. at 3-6.) Plaintiffs sought declaratory relief that Defendants had violated Plaintiffs' legal rights, an

accounting of amounts Defendants owed to Plaintiffs, "judgment against the Defendant awarding each Plaintiff monetary damages in the form of back pay compensation, liquidated damages equal to his/her unpaid compensation, and unpaid overtime plus pre- and post-judgment interest," and attorneys' fees.  (Compl. at 6-7.)

Though Plaintiffs' demand for relief did not include a specific sum, Plaintiffs' hinted at what they thought their case was worth when they requested $177,520, plus $125,000 in attorneys' fees, to settle the case.  (Declaration of Howard B. Golds in support of Defs' Opp. ["Golds Decl."], ¶ 5; see also Pls.' Reply at 6.)  Of that $177,520, Plaintiffs specifically sought $156,000 -- or roughly $3,300 per Plaintiff -- on their second claim for underpaid overtime wages. (Golds Decl., ¶ 5.)

In May 2008 the parties agreed to settle their legal dispute. (See Settlement Agreement Notice, docket no. 24.)  By that point, the Defendants did not dispute that they had underpaid Plaintiffs' overtime wages.  (Defs.' Memorandum of Contentions of Law and Fact, docket no. 20, at 2.)  Per the settlement, Defendants agreed to pay $8,173.69 to settle Plaintiffs' claims.  (Golds Decl., ¶ 10.)  Defendants paid 60% of this settlement to the individual Plaintiffs and 40% to Plaintiffs' counsel per counsel's contingency fee with the Plaintiffs.  (Id.)

Though the parties discharged their obligations under the terms of their preliminary settlement agreement, the final agreement fell apart before the Court could approve it.  Plaintiffs' counsel insisted that it receive statutory attorneys' fees, while Defendants wished to proceed with the $8,173.69 oral settlement as a full discharge of their liability.  (See Golds Decl., ¶ 11.)

The case was set for trial in June 2008, but before trial commenced the parties again appeared to have reached a settlement. In September 2008, the Court noted in a Minute Order that the parties had settled the matter except for the issue of attorneys' fees. (Minutes of Status Conference re Settlement/Dismissal, docket no. 29.) The Court invited the parties to file a motion for attorneys' fees, and Plaintiffs responded with a request for $63,712.50. (Id.; see also Motion for Attorney Fees in Amount of $63,712.50, docket no. 30.) In November 2008, the Court determined that Plaintiffs were not entitled to attorneys' fees because they were not the "prevailing party" in the litigation. The Court reasoned that the matter had not been resolved in a "judicially sanctioned material alteration in the legal relationship between the parties" as is required by Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 601 (2001) and subsequent cases. (Order Denying Plaintiffs' Motion for Attorneys' Fees in the Amount of $63,712.50, docket no. 35, at 7.)

Plaintiffs then filed a Motion for Reconsideration (docket no. 40) and a Motion to Approve Consent Judgment (docket no. 41). The Court denied these motions because it determined that the proposed consent judgment was not a settlement of the underlying dispute. (Minutes of In Chambers Order re Plaintiffs' (1) Motion to Approve Consent Judgment and (2) Motion for Reconsideration, docket no. 47 (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982)).) The Court again set the matter for trial, which was to take place on February 3, 2009.

///

4

Before trial, Plaintiffs abandoned their first claim relating to the airport training exercise. (Pls.' Contentions of Fact and Memorandum of Law, docket no. 48, at 2). Because Defendants had previously conceded the second claim for underpayment of overtime wages, the only matter at issue for trial was whether Plaintiffs were entitled to liquidated damages pursuant to 29 U.S.C. § 216(b). Defendants did not dispute their liability for underpaying Plaintiffs, but contended that they did not actually owe Plaintiffs any money because they were legally entitled to offset the underpaid overtime wages against various overpayments Defendants had made to Plaintiffs. (Defs.' Trial Brief, docket no. 50, at 1-2, 4-9.) Accordingly, Defendants argued, Plaintiffs should not be entitled to recover liquidated damages. (See id. at 1-2.)

In May 2009, prior to holding trial the Court invited the Defendants to file a motion for partial summary judgment to resolve the remaining legal issues:

> In light of the Court's holding that the Court cannot award
> attorneys' fees without a judicially sanctioned settlement [Docket
> No. 47], the Court finds that this case is in a procedural
> quagmire. Reviewing the Parties' pre-trial papers, the Court
> invites Defendant to make a partial motion for summary judgement
> on Plaintiffs' claim that Defendant failed to properly calculate
> Plaintiffs' regular rate when determining overtime. If that motion
> is denied, the Court will move forward to address liquidated
> damages.

(In Chambers Order re Invitation to Defendant to File Motion for Partial Summary Judgment, docket no. 56.)

Defendants then filed a Motion for Partial Summary Judgment. In adjudicating the motion, the Court determined that Defendants were entitled to offset their overpayments against their underpayments under 29 U.S.C. 207(h), but only within each particular pay period. The Court determined that Defendants overpaid Plaintiffs by approximately $54,000 when the offsets are calculated in total, but Plaintiffs were entitled to $1,950.50 in unpaid overtime wages when the offsets are calculated on a per-pay-period basis. The Court concluded:

> For the reasoning set forth above, the Court holds § 207(h) has an implicit limit and may only be applied within a single pay period. As such, the Court DENIES the City's motion for summary judgment.
>
> As such, Plaintiffs are entitled to $1,950.50.

(Order Denying Defendants' Motion for Partial Summary Judgment, docket no. 63, at 12.)

To summarize: for all practical purposes, the parties long ago settled their claims and Defendants long ago paid Plaintiffs money owed to them as unpaid overtime wages. To the extent that their dispute involved a question of law, this legal dispute centered on the question of whether Defendants owed Plaintiffs $1,950.50 or $0. This question was resolved through Defendants' Motion for Partial Summary Judgment, which the Court denied on July 9, 2009. The Court determined as a matter of law that Plaintiffs are entitled to $1,950.50 in unpaid overtime.

Here, Plaintiffs are moving for liquidated damages and attorneys' fees with respect to the $1,950.50 claim for unpaid overtime. Plaintiffs seek liquidated damages in the amount of $1,950.50 pursuant to 29 U.S.C. § 216(b) and attorneys fees in the amount of $94,912.50

pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 55(d).

## III. ANALYSIS

### A.    PREVAILING PARTY

The threshold issue is whether Plaintiffs are the "prevailing party" entitling it to liquidated damages and attorneys' fees under 29 U.S.C. § 216(b).[1]

At the time the parties briefed the present Motion, the Court had not yet entered judgment in Plaintiffs' favor because Plaintiffs had not moved for summary judgment.  But the Court had already determined that "Plaintiffs are entitled to $1,950.50" as a matter of law.  (Order Denying Defendants' Motion for Partial Summary Judgment, docket no. 63, at 12.)

Rather than engage in a convoluted discussion of the Supreme Court's "prevailing party" standard, the Court prefers to direct entry of judgment in Plaintiffs' favor for the sum of $1,950.50.  The Court accordingly has issued an accompanying Order Entering Judgment for Plaintiffs.  (Order Entering Judgment for Plaintiffs, docket no. 67.)[2] The legal and factual bases for this entry of judgment are set out in the Court's July 9, 2009 Order.  (See Order Denying Defendants' Motion for Partial Summary Judgment, docket no. 63.)

---

[1] In a previous order, the Court determined that the general "prevailing party" analysis articulated in Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res., 532 U.S. 598, 601 (2001), applies to FLSA actions.  (Order Denying Plaintiffs' Motion for Attorneys' Fees in the Amount of $63,712.50, Nov. 12, 2008, at 3-5.)
[2] At the September 14, 2009 hearing, counsel for both parties consented to such entry of judgment.

Accordingly, Plaintiffs are the "prevailing party" under Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res., 532 U.S. 598 (2001).

**B.   LIQUIDATED DAMAGES**

Under 29 U.S.C. § 216(b), a prevailing party in a FLSA action is entitled to both unpaid overtime compensation and "an additional equal amount as liquidated damages."  Liquidated damages are mandatory rather than discretionary -- the statute requires that the "employer . . . shall be liable" for these damages.  The only exception is where "employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of FLSA.  29 U.S.C. § 260.  If such a showing is made, the court has discretion to reduce the amount of liquidated damages and award any amount it deems appropriate.  Id.

The Ninth Circuit has explained the nature of the defendant's burden in avoiding liquidated damages:

> [A] FLSA-liable employer bears the "difficult" burden of proving
> both subjective good faith and objective reasonableness, "with
> double damages being the norm and single damages the exception."
> Where the employer "fails to carry that burden," we have noted,
> "liquidated damages are mandatory."

Alvarez v. IBP, 339 F.3d 894, 910 (9th Cir. 2003) (citations omitted).  Though Defendants attempt to reframe the burden as falling on Plaintiffs to establish bad faith (Opp. at 19-20), the burden is on

Defendants to establish good faith within the meaning of § 260 —- that
is, subjective good faith and objective reasonableness.

Defendants point to evidence contained in the Declaration of
Christopher Stathis asserting that the underpayment was the result of a
"computer program error." (Opp. at 20.) The Declaration establishes
that Defendants used PeopleSoft computer software to organize the
City's payroll, and that "despite the City's including longevity pay
and out of class pay in the fire fighter's [sic] base pay, the
PeopleSoft program was not programmed to include those two types of pay
when calculating overtime compensation." (Declaration of Christopher
Stathis in Support of Motion for Partial Summary Judgment ["Stathis
Decl."], docket no. 57, ¶¶ 3, 8.)[3]

Subjective good faith seems quite clear in the present case.
Defendants were not out to shortchange Plaintiffs. In fact, according
to the Order Denying Defendants' Motion for Partial Summary Judgment,
Defendants overpaid Plaintiffs by approximately $54,000. (July 9, 2009
Order at 12.) It seems reasonable to infer that Defendants failed to
adequately oversee their payroll computer program. Their actions were
not done in bad faith.

The important question, though, is whether Defendants' actions are
"objectively reasonable." Under this prong of the good faith defense,
a defendant's conduct is "viewed through the lens of the 'reasonable
man' famous in tort law." Walton v. United Consumers Club, Inc., 786
F.2d 303, 312 (7th Cir. 1986). As one court has colorfully put it,

---

[3] Plaintiffs object to the evidence on the ground that it is not admissible,
apparently because it was not attached to Defendants' Opposition. (Pls.' Reply at
12 n.3.) For present purposes, the Court will consider the statements made in the
Stathis Declaration, as they ultimately do not support Defendants' legal
contentions.

"[a] good heart but an empty head does not produce a defense." _Id._

Thomas v. Howard Univ. Hosp., 39 F.3d 370, 373 (D.C. Cir. 1994), is instructive on this point. In that case, the defendant employer miscalculated its employees' regular payrates in determining the base rate for overtime wages. _Id._ at 372. The regular rates failed to include the proper calculation of premiums paid for work on Sundays, holidays, and undesirable workshifts. _Id._ As a result of the payroll department's "coding errors," employees' overtime pay was calculated based on their ordinary base rates without taking into account holiday, Sunday, and workshift premiums. _Id._ Summarizing the 29 U.S.C. § 260 "good faith" caselaw, the court determined that an employer has acted in reasonable good faith "only if it has relied on a reasonable, albeit erroneous, interpretation of the Fair Labor Standards Act or of the regulations issued thereunder." _Id._ at 373 (listing cases). Inadvertent mistakes by lower-level payroll employees do not insulate employers from liability. _Id._ Liquidated damages are appropriate unless the employer "thought the acts or omissions causing the underpayments did not violate the law." _Id._ Mere inadvertence, unawareness, or mistake as to wage calculations does not qualify as a reasonable belief that such calculations are legally permissible. _See id._ Accordingly, the Court of Appeals remanded the case to the district court "to determine the amount of liquidated damages under 29 U.S.C. § 216(b) to which appellants are entitled." _Id._ at 373-74. There was no question, though, that the employees were entitled to such liquidated damages.

Other cases have agreed that it is not objectively reasonable for an employer to violate FLSA because of human or mechanical error. _See_

<u>Martin v. Indiana Michigan Power Co.</u>, 292 F. Supp. 2d 947, 956-57, 960-61 (W.D. Mich. 2002) (awarding liquidated damages where employer misclassified employee in organizational map and improperly paid him as though he held a FLSA-exempt position); <u>Dominici v. Bd. of Educ. of Chicago</u>, 881 F. Supp. 315, 320 (N.D. Ill. 1995) ("An employer may not set up an inefficient accounting procedure and then claim it is not responsible for timely payment of wages due to its own incompetence."); <u>Douglass v. Hurwitz Co.</u>, 145 F. Supp. 29, 33-34 & n.7 (E.D. Pa. 1956) (determining employer acted unreasonably where "he did not have reasonable grounds to compute the hours worked by plaintiff in the way that those hours were computed on the [time]cards offered in evidence"); <u>see also</u> <u>Cahill v. City of New Brunswick</u>, 99 F. Supp. 2d 464, 475 (D.N.J. 2000) ("The City should, of course, be aware that mere bureaucratic inertia is no excuse for late payment or nonpayment of wages.") (dictum).

Accordingly, liquidated damages are appropriate in the present case because Defendants' purported computer programming error is objectively unreasonable. Plaintiffs are entitled to $1,950.50 in liquidated damages.

**C.   ATTORNEYS' FEES**

Under 29 U.S.C. § 216(b), a prevailing party in a FLSA action is entitled to reasonable attorneys' fees. The reasonableness of an attorney's request for fees is determined by the "lodestar" approach set forth in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). Under the lodestar calculation, a reasonable fee is the product of "the number of

hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id.

Though the lodestar amount is presumed to be reasonable, see Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992), the Court may adjust the lodestar figure in order to reach a more reasonable result on the basis of additional factors not considered in the lodestar calculation. See Morales v. City of San Rafael, 96 F.3d 359, 363-64 (9th Cir. 1996), amended on other grounds, 108 F.3d 981 (9th Cir. 1997).

Defendants raise a series of challenges to Plaintiffs' proposed fee award. The Court will first address the challenges as they relate to the calculation of the lodestar figure, and then will address the challenges as they relate to the adjustment of the lodestar.

## 1. Reasonableness of Rates

In determining whether a particular fee rate is reasonable, the Court must look to "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984). The relevant community includes "attorneys practicing in the forum district" -- that is, the district in which the court sits. Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992). In determining the applicable market rate, "the burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits[4] -- that the requested rates are in line with those prevailing in the community for

---

[4] Though an attorney's own affidavit is insufficient, affidavits of third parties are sufficient to satisfy this burden. See Bouman v. Black, 940 F.2d 1211, 1235 (9th Cir. 1991). Plaintiffs have not submitted third parties' affidavits in this case. [Footnote added by Court.]

similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n. 11. Once the fee applicant has satisfied its burden of producing evidence of reasonableness, the opponent of the fees bears the burden of producing evidence that the fees are unreasonable. See Gates, 987 F.2d at 1405.

### a. Plaintiffs' attorney Michael McGill

Plaintiffs provide a Declaration of attorney Michael A. McGill asserting that Plaintiffs' attorneys' hourly fee of $375 is reasonable. (Declaration of Michael A. McGill ["McGill Decl."], ¶ 12.) Plaintiffs support this assertion with information from a National Law Journal salary survey showing billing rates for numerous major national firms. (Pls.' Ex. E.) Billing rates for firms based in the Central District (including Los Angeles, Riverside, and Irvine) range from $260 to $850 for partners and $190 to $505 for associates. (Pls.' Ex. E.) Plaintiffs also provide a copy of a state Superior Court order finding that lawyers from Plaintiffs' law firm, including Mr. McGill, were entitled to a reasonable rate of $375. (McGill Decl., ¶ 13; Pls.' Ex. C, Decision on Motion for Attorneys' Fees: Granted, at 3.) The Court notes that the underlying declaration in that case asserted that the $375 hourly rate applied to Mr. McGill and Dieter C. Dammeier, who were both "experienced and experts in this field of litigation." (Pls.' Ex. C, Declaration of Michael A. McGill, ¶ 20).

Defendants argue that Plaintiffs seeks an unreasonable hourly rate of $375 for a fifth-year attorney. In the abstract, this proposition is probably true, and most consumers of legal services would

undoubtedly agree with it. However, the Court believes that this particular fifth-year attorney, Michael A. McGill, deserves the full $375 he requests. Unlike most five-year attorneys, Mr. McGill is a partner (in fact, a name partner) in his firm, Lackie, Dammeier & McGill, APC. (McGill Decl., ¶¶ 1, 9.) Though it appears to be a small firm, the firm has existed for more than twelve years. (Id. at ¶ 2.) It is no small feat for a fifth-year attorney to achieve partner status -- let alone name partner status -- in a reasonably well-established law firm with a solid client base. (See McGill Decl., ¶ 9.)

Defendants dispute the form of evidence that Plaintiffs use to determine a reasonable rate. Defendants assert that Plaintiffs must include evidence in addition to the moving attorney's own affidavit. Plaintiffs appear to satisfy this burden by introducing evidence of the National Law Journal billing rate survey and the Superior Court judgment. Defendants provide no rebuttal evidence to show that Mr. McGill's asserted rate is unreasonable.

The Court finds Mr. McGill's hourly rate of $375 to be reasonable.[5]

### b. Plaintiffs' other attorneys

Defendants have a stronger argument that associates at Plaintiffs' firm are not entitled to a $375 rate. Mr. McGill's declaration states generally that his firm's $375 rate is reasonable, but he does not identify the basis for finding that rate to be reasonable for a "new" (i.e., first-year) associate, Mr. Bansal, and a third-year associate,

---

[5] The Court notes that other courts in this district have found such a rate to be reasonable for FLSA litigation. See Hoffman v. Construction Protective Svcs., Inc., No. EDCV 03-1006-VAP (SGLx), 2006 WL 6105638, at *4 (C.D. Cal. Aug. 31, 2006).

Ms. Khoury.  (See McGill Decl., ¶¶ 11-12; see also Pls.' Reply at 8-

10.)  To the extent that McGill attempts to justify Bansal's billing

rate, McGill states that "his background in finance" was "invaluable"

to the present case because of "the need to review payroll records for

the plaintiffs."  (McGill Decl., ¶ 11.)  Perhaps Bansal's work truly

was "invaluable," but given the nature of labor market economics,

everyone has their price.  McGill fails to identify Mr. Bansal's price

as a reasonable one.

As for Ms. Khoury, McGill fails to justify her rate -- in fact,

McGill does not even mention Ms. Khoury.  (See generally McGill Decl.)

(From the parties' various submissions and the parties' statements at

the September 14, 2009 hearing, the Court understands Ms. Khoury to

have been a third-year associate.)

Plaintiffs provide no evidentiary support of the reasonableness of

their associates' rates.  The rates are not supported by the Superior

Court decision.  That decision only involved Mr. McGill and Mr.

Dammeier, both of whom are name partners in the Lackie, Dammeier &

McGill firm.[6]  Nor are Plaintiffs' associates' purported rates supported

by the National Law Journal salary survey.  The Court notes that a $375

hourly rate is near the high end of associate billing rates and is

usually reserved for highly experienced associates or those working at

major national firms on complex matters.  Further, in the Court's

experience, law firm associates tend to bill at a rate of roughly half

///

///

---

[6] The Court takes judicial notice of the fact that the firm holds out Mr. Dammeier as a founding partner of the firm.  See "About Lackie & Dammeier," http://www.policeattorney.com/about.htm.

that of law firm partners. The National Law Journal salary survey suggests that associates bill at about 60% the rate of partners.[7]

In short, Plaintiffs' counsel has not adequately supported its claim that a $375 rate is reasonable for the work of first- and third-year associates.

The Court believes that a 60% modifier is an appropriate figure for determining reasonable rates for Mr. Bansal's and Ms. Khoury's rates as compared to Mr. McGill's. Multiplying Mr. McGill's hourly rate of $375 by 0.6 provides a rate of $225 for Mr. McGill's associates.

Accordingly, the time spent on this matter by Mr. Bansal and Ms. Khoury will be assessed at a reasonable $225 hourly rate.[8]


**2.    Reasonableness of Hours**


Defendants assert that Plaintiffs have not properly exercised billing judgment by eliminating unproductive, excessive, and unreasonable time. Defendants point to the following:

-nearly 14 hours spent researching and drafting a five and a half page complaint;

-5 hours spent on a retaliation issue not raised before this Court;

-nearly 10% of all hours billed involved Plaintiffs' attorneys'

---

[7] As noted, billing rates for firms based in the Central District range from $260 to $850 for partners and $190 to $505 for associates. (Pls.' Ex. E.) The median partner rate is $555 and the median associate rate is about $350. The median associate rate is accordingly 60% of the median partner rate.

[8] The Court notes that other courts in this district have found this rate to be reasonable for FLSA litigation. See Hoffman v. Construction Protective Svcs., Inc., No. EDCV 03-1006-VAP (SGLx), 2006 WL 6105638, at *4 (C.D. Cal. Aug. 31, 2006).

"talking amongst themselves" (Opp. at 18);

-an hour spent reviewing Defendants' four page answer;

-half an hour drafting a five line "Notice of Status Conference";

-2.5 hours discussing "proceeding with trial on case" even after Notice of Settlement was filed;

-25 hours spent unsuccessfully bringing the first attorneys' fees motion;

-25.3 hours spent unsuccessfully bringing the motion for reconsideration.

Defendants therefore assert that 93.3 hours should be excluded from the fee award. (Defs.' Opp. at 17-19.)

In determining the reasonable number of hours billed, the Court has discretion to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." See Hensley, 461 U.S. at 434. As a preliminary matter, the Court notes that Plaintiffs have not provided any evidence that they exercised proper "billing judgment." It is preferred, though in no way required, that counsel provides "[c]ontemporaneously recorded time sheets," see Webb v. Bd. of Educ., 471 U.S. 234, 238 n.6 (1985), so that the Court can see the extent to which counsel has excised unnecessary expenditures of time in its final request for fees. See generally Martin A. Schwartz & John E. Kirklin, 2 Section 1983 Litigation: Statutory Attorney's Fees 219-33 (3d ed. 1997 & 2009 supp.).

Absent evidence of Plaintiffs' counsel's use of billing judgment, the Court believes it is proper to scrutinize Plaintiffs' request more closely than it would if counsel's billing judgment were evident on the face of Plaintiffs' submissions.

As for the time spent on unsuccessful motions, the Court notes that Plaintiffs' counsel does not respond to Defendants' arguments regarding the 25 hours spent on the first attorneys' fees motion and the 25.3 hours spent on the motion for reconsideration. (See Pls.' Reply at 10.) However, Plaintiffs' counsel's time records explain that the second attorneys' fee motion (i.e., the present motion) was "mostly copied from prior," and counsel only spent 3.4 hours in adapting the first motion. (See Pls.' Ex. D at 10.) The time spent on the first attorneys' fees motion appears to have been expended reasonably.

Less reasonable were the 25.3 hours spent bringing a Motion for Reconsideration. The Court was perfectly clear in its November 12, 2008 Order that the "prevailing party" analysis requires a "judicially sanctioned material alteration in the legal relationship between the parties." (Order Denying Plaintiffs' Motion for Attorneys' Fees in the Amount of $63,712.50, docket no. 35, at 7.) The Court cited examples of "judicially sanctioned material alteration[s]" and explained that the parties' preliminary settlement did not qualify. The Court specifically pointed out that the parties "never signed a settlement agreement, nor have they petitioned the court to sanction the terms of the settlement." Id. Plaintiffs' counsel apparently understood the Court's meaning because, simultaneously with the Motion for Reconsideration, counsel filed a Motion to Approve Consent Judgment. (See Plaintiffs' Motion to Approve Consent Judgment, docket no. 40; Plaintiffs' Motion for Reconsideration, docket no. 41.) Were the Court to approve the consent judgment, Plaintiffs would have clearly qualified as the prevailing party and been entitled to attorneys' fees per the Court's November 12 Order. Therefore, Plaintiffs' Motion for

Reconsideration was unnecessary, or at least premature, in light of Plaintiffs' Motion to Approve Consent Judgment. Plaintiffs should have waited until <u>after</u> the Court approved or rejected the consent judgment before deciding whether or not to incur an additional 25.3 hours on a Motion for Reconsideration. Even better, Plaintiffs might have considered spending those 25.3 hours on a motion for summary judgment or another means of achieving the "judicially sanctioned material alteration" that the Court so clearly required in order to award attorneys' fees.

In light of these considerations, the Court feels that it must subtract the 25.3 hours spent on the Motion for Reconsideration. This is particularly appropriate given that Plaintiffs have failed to make any factual showing or legal argument that the time spent on the Motion for Reconsideration was reasonable. (<u>See generally</u> Pls.' Mot.; McGill Decl.; Pls.' Reply.) These 25.3 hours will be subtracted from the time spent by Plaintiffs' associate attorneys, who appear to have been responsible for the Motion. (<u>See</u> Defs.' Opp. at 19 (citing Pls.' Ex. D at 8).)

Plaintiffs' counsel also does not address the reasonableness of the five hours spent on retaliation issues. (<u>See</u> Pls.' Reply at 10.) Plaintiffs never raised any retaliation claims during litigation. Because the issues were never brought, they do not fall within the Ninth Circuit's two-step process for analyzing unsuccessful but related claims. <u>See</u> <u>Thorne v. City of El Segundo</u>, 802 F.2d 1131, 1141 (9th Cir. 1986). Instead, they appear to have been both meritless and unrelated to Plaintiffs' Complaint. The Court accordingly subtracts five hours from counsel's hours worked —- 1.1 hours for Mr. McGill, and

3.9 hours for Ms. Khoury, as per the breakdown in Plaintiffs' time records.  (See Defs.' Opp. at 18 (citing Pls.' Ex. D at 2).)

With respect to Defendants' remaining specific contentions, the Court feels that it is reasonable to allow Plaintiffs to recover for these efforts.  Plaintiffs correctly assert that they may recover time spent on various litigation-related activities, including conferring with co-counsel and drafting litigation documents.  (Pls.' Reply at 10.)  Thus, the Court finds the following hours to have been reasonably spent in litigating this case:

> -nearly 14 hours spent researching and drafting a five and a half
> page complaint;
> -nearly 10% of all hours billed involved Plaintiffs' attorneys'
> "talking amongst themselves" (Opp. at 18);
> -an hour spent reviewing Defendants' four page answer;
> -half an hour drafting a five line "Notice of Status Conference";
> -2.5 hours discussing "proceeding with trial on case" even after
> Notice of Settlement was filed.

(Defs.' Opp. at 17-19.)

Having subtracted these hours, Plaintiffs' counsel's reasonable hours stand at 36.9 hours for McGill and 165.9 hours for the associates.  (See generally Pls.' Ex. D.)

On top of these reductions, Defendants also argue that Plaintiffs should not recover for time spent on the unsuccessful training exercise claims.  When attorneys raise multiple claims and only succeed on some of those claims, their hours may be reduced in proportion to the extent of their success.  In the Ninth Circuit, courts employed a two-step analysis when examining the reasonableness of hours incurred by parties

that succeed on only some of their legal theories:

> First, the court asks whether the claims upon which the plaintiff
> failed to prevail were related to the plaintiff's successful
> claims.  If unrelated, the final fee award may not include time
> expended on the unsuccessful claims.  If the unsuccessful and
> successful claims are related, then the court must apply the
> second part of the analysis, in which the court evaluates the
> "significance of the overall relief obtained by the plaintiff in
> relation to the hours reasonably expended on the litigation."  If
> the plaintiff obtained "excellent results," full compensation may
> be appropriate, but if only "partial or limited success" was
> obtained, full compensation may be excessive.  Such decisions are
> within the district court's discretion.

Thorne v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986)
(citing and quoting Hensley, 461 U.S. at 434-47).

Related claims typically "will involve 'a common core of facts' or
will be based on related legal theories," whereas "unrelated claims
will be 'distinctly different,' and based on different facts and legal
theories."  Thorne, 802 F.2d at 1141 (citing Hensley, 461 U.S. at 434-
35).  Courts appear to prefer the "course of conduct" test, which
examines "whether relief sought on the unsuccessful claim 'is intended
to remedy a course of conduct entirely distinct and separate from the
course of conduct that gave rise to the injury on which the relief
granted is premised.'"  Schwarz v. Secretary of Health & Human
Services, 73 F.3d 895, 903 (9th Cir. 1995) (quoting Thorne, 802 F.2d at
1141).  The central aim of this inquiry is to discover whether "'it is
likely that some of the work performed in connection with the

[unsuccessful claim] also aided the work done on the merits of the [successful claim].'" Id. (quoting Herrington v. County of Sonoma, 883 F.2d 739, 747 (9th Cir. 1989)).

With respect to the request for fees arising out of the training exercises, it is important to note that the training exercise claims were abandoned at some point before the trial scheduled for February 3, 2009. (Pls.' Contentions of Fact and Memorandum of Law, docket no. 48, at 2.) Plaintiffs appear to have relied on the training exercise claims in their Motion to Approve Consent Judgment (docket no. 40) and their Motion for Reconsideration (docket no. 41), which were resolved in the Court's ruling on December 18, 2008 (docket no. 47). By January 5, 2009, Plaintiffs had clearly abandoned their training exercise claims. (See Pls.' Contentions of Fact and Memorandum of Law, docket no. 48, at 2.)

Plaintiffs argue that "Defendants complied with the prayer for relief and properly paid all money to the Plaintiffs on this issue," that little work was performed on issue because "the Defendants agreed to pay that claim early on in litigation," and that the training-related claims were legally and factually related to the successful claims for overtime pay. (Pls.' Reply at 5.)

As a threshold issue, it is important to point out that the Court has not entered judgment or approved a settlement in Plaintiffs' favor on the training exercise claims, so under Buckhannon the Plaintiffs are not the prevailing party on those claims. Nor are Plaintiffs' "successful" on these claims within the meaning of the Supreme Court's Hensley framework and the Ninth Circuit's Thorne framework. In the Ninth Circuit, "a claim may be deemed unsuccessful under Hensley once

it has been dismissed by the plaintiff or by the court, regardless of whether the dismissal would have been upheld on appeal." <u>Schwarz</u>, 73 F.3d at 902 (9th Cir. 1995). Abandonment of a claim is for all intents and purposes the same as a voluntary dismissal.

Thus, because Plaintiffs failed to continue prosecuting their training exercises claims, these claims are deemed unsuccessful —- even though Plaintiffs may have received money from Defendants through a private settlement. <u>See</u> <u>P.N. v. Seattle School District No. 1</u>, 474 F.3d 1165, 1173-74 (9th Cir. 2007) (private settlement that is not judicially enforceable does not qualify party as "prevailing party" and entitle it to award of attorneys' fees under IDEA). Plaintiffs' counsel cannot reasonably argue that it is entitled to fees simply because "Defendants . . . properly paid all money [owed] to Plaintiffs on this issue." As the Court has previously held, mere payment of a claim is insufficient to qualify the recipient of such payments as the prevailing party. (<u>See</u> Order Denying Plaintiffs' Motion for Attorneys' Fees in the Amount of $63,712.50, docket no. 35, at 7.)

That said, Plaintiffs have a reasonable argument that the training exercise claims were factually and legally related to the unpaid overtime claims.[9] The Court agrees, but only in part. Per Plaintiffs' Complaint, the training exercises for which Plaintiffs sought recovery occurred in May 2007. (Compl. ¶ 9.) The unpaid training exercise wages constituted overtime under 29 U.S.C. § 207. (Compl. ¶ 14.) In comparison, the claims for miscalculated overtime rates occurred on a near-weekly basis at various times from December 2005 to June 2008.

[9] Technically, both sets of Plaintiffs' claims involve unpaid overtime wages. Having referred to the first legal theory as the "training exercise" claim, the Court refers to the Plaintiffs' second legal theory —- the improper calculation of overtime rates -- as the "unpaid overtime" claim.

(See Stathis Decl., ¶ 7.)  Just as with the training exercise claims,
these unpaid overtime wages constituted unpaid overtime under 29 U.S.C.
§ 207.  (See Compl. ¶ 18.)  However, with respect to the claim for
unpaid overtime, Plaintiffs also asserted legal theories related to
calculation methods under 29 C.F.R. 778.208.  (Compl. ¶ 17.)

Accordingly, Plaintiffs' two sets of claims were legally related
in the sense that they both sought unpaid overtime wages under 29
U.S.C. § 207.  There is no doubt that the basic legal research about 29
U.S.C. § 207 was relevant to both sets of claims.  Thus, to the extent
that counsel seeks fees for time spent in general legal research on
FLSA, counsel is entitled to recover fees for all of that time.[10]

However, to the extent that counsel seeks fees for time spent on
the training exercise claims, that time is not recoverable.  Factually,
Plaintiffs' two claims arose from entirely different "courses of
conduct."  The training exercises were a discrete set of events
occurring at a single moment in time; in contrast, the miscalculated
overtime wages arose from a series of events occurring over a two-and-
a-half-year period.  The two sets of claims are legally distinct as
well: the training exercise claims involved determining whether wages
are due for government employees' mandatory certification training,
(see Defs.' Opp. at 3 (citing 29 C.F.R. § 553.226)), whereas the
overtime calculation claims involved determining whether overtime pay
rates must include adjustments to reflect base rates and whether
offsetting overpayments are calculated as a whole or on a per-pay-
period basis.  Thus, to the extent that counsel seeks fees for time

---

[10] For example, the Court will allow recovery of fees for the entire 7.4 hours spent
discussing and researching FLSA issues on September 18, 2007. (See Pls.' Ex. D, at
1.)  The Court notes, however, that relatively little of counsel's time was spent
conducting legal research.

spent specifically on the training exercise claims, this time is "unrelated" within the first prong of the two-part Thorne test. As for the second Thorne prong, Plaintiffs did not achieve "excellent" results. As is discussed infra, Plaintiffs achieved very limited success and should not recover for time spent on an unrelated legal theory that they abandoned before trial. Accordingly, the Court will exclude this time from its lodestar calculation.

Since it is impossible to determine exactly which hours were spent on the training exercise claims, the Court will deduct 40% of the hours incurred on general litigation efforts[11] between the beginning of the case and the time when the training exercise claim was abandoned following the Court's December 18, 2008 Order. The Court believes that these deductions are proper under both the Ninth Circuit's "course of conduct" test, which looks at the relationship between the factual events underlying the claims, as well as the Ninth Circuit's admonition to consider the extent of overlapping labor on the separate claims. See Schwarz, 73 F.3d at 903. In other words, the training exercise claims are fundamentally unrelated to the unpaid overtime claims (aside from the general research on FLSA common to both sets of claims).

The Court has attempted to identify the specific hours expended on

---

[11] As identified by Plaintiffs' time sheets, these general litigation efforts include drafting documents, conferring with counsel (both co-counsel and opposing counsel), appearing in court, reviewing documents, and interacting with clients. (See generally Pls.' Ex. D.) The first Motion for Attorney's Fees is also included as part of Plaintiffs' general litigation efforts, as the training exercise claims constituted part of Plaintiffs' basis for seeking fees. However, the Court does not include the Motion for Reconsideration in this part of the calculation, because the hours spent on that Motion have already been excluded from Plaintiffs' lodestar calculation.

The Court feels that it is reasonable to reduce the time spent on general litigation efforts by 40% given that Plaintiffs only succeeded on 50% of their causes of action. Absent a further breakdown from Plaintiffs, the Court allocates 60% of counsel's time to the more fact-intensive overtime wage claims and 40% to the unsuccessful training exercise claims.

the unsuccessful and unrelated training exercise claims.  See Hensley,
461 U.S. at 436-37 ("The district court may attempt to identify
specific hours that should be eliminated.")  However, given the lack of
detail in Plaintiffs' counsel's time records, the Court must resort to
a crude mathematical formula to determine which hours should be
excluded.  See Schwarz, 73 F.3d at 905 ("[A] district court does not
abuse its discretion when it resorts to a mathematical formula, even a
crude one, to reduce the fee award to account for limited success.").
It appears that a 40% reduction of time is reasonable in these
circumstances.  See, e.g., id. at 900, 905 (affirming 75% reduction of
particular hours spent on unrelated claims where only one of four
claims raised during that time period ultimately succeeded).

     Plaintiffs' counsel incurred 150.1 hours on these general
litigation matters prior to December 18, 2008, with McGill working 23.6
hours and the firm's associates working 126.5 hours.  (See Pls.' Ex. D.
at 1-8.)  Taking 40% of each of these numbers, the Court will reduce
McGill's time by 9.44 hours and the associates' time by 50.60 hours.
Also, the Court will exclude the 1.6 associate hours specifically spent
researching training exercise claims on May 1, 2008.  (See Pls.' Ex. D,
at 5.)

     To summarize, the Court excludes the following time from
Plaintiffs' calculation of reasonable fees: 25.3 hours of associate
time spent on the Motion for Reconsideration; 1.1 hours of partner time
spent on the retaliation issues that were never raised; 3.9 hours of
associate time on the retaliation issues; 9.44 of partner time on the
///

training exercise claims; and 52.2 hours[12] of associate time on the training exercise claims.

### 3.   Lodestar Calculation

Having determined the reasonable rates and reasonable hours incurred by Plaintiffs' counsel, the Court arrives at the following lodestar calculations:

Plaintiffs' Attorney McGill

-fee = ($375/hour X 27.46 hours)   = $10,297.50

Plaintiffs' Associate Attorneys

-fee = ($225/hour X 113.70 hours)  = $25,582.50

Lodestar Rate  = $35,880.00

### 4.   Lodestar Adjustment

The initial lodestar calculation does not end the Court's inquiry. Even though the "reasonable" lodestar fee is presumed to be the proper fee, the Court retains discretion to adjust this number on account various considerations.  See Hensley, 461 U.S. at 434-37.

The factors used to determine adjustments to the lodestar are listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976).  The factors include:

1) the time and labor required, 2) the novelty and difficulty of

the questions involved, 3) the skill requisite to perform the

---

[12] That is, 50.6 hours of general litigation efforts as allocated to the training exercise claims and 1.6 hours of specific research on the training exercise claims.

legal service properly, 4) the preclusion of other employment by

the attorney due to acceptance of the case, 5) the customary fee,

6) whether the fee is fixed or contingent, 7) time limitations

imposed by the client or the circumstances, 8) the amount involved

and the results obtained, 9) the experience, reputation, and

ability of the attorneys, 10) the "undesirability" of the case,

11) the nature and length of the professional relationship with

the client, and 12) awards in similar cases.

United Steelworkers of America v. Phelps Dodge Corp., 896 F.2d 403, 406

n. 3 (9th Cir. 1990).[13]  In considering these factors, a court obviously

should not duplicate its analysis by relying on the same factor twice

—- first by determining the lodestar and second by adjusting it.  See

Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996),

amended on other grounds, 108 F.3d 981 (9th Cir. 1997).

Defendants argue that Plaintiffs' lodestar amount should be

reduced because of the eighth factor: "the amount involved and the

results obtained."  Defendants argue that Plaintiffs achieved only a

nominal recovery —- $3,901, including the award of liquidated damages

—- and should not be able to recover such extensive attorneys' fees for

prosecuting such a small claim.  This argument is intuitively

appealing.  Plaintiffs initially requested $177,520 plus $125,000 in

attorneys' fees to settle the case.  (Golds Decl., ¶ 5.)  Plaintiffs

ultimately received payments of $10,124.19 ($8,173.69 in settlement

funds plus $1,950.50 in liquidated damages).  They have received less

than 6% of what they had initially sought.

---

[13] The sixth and tenth factors have been expressly and implicitly disapproved of by later decisions.  See Cuzze v. Univ. and Community College System of Nevada, 172 P.3d 131, 137 n. 30 (D. Nev. 2007).  These factors do not factor into the Court's calculation.

Furthermore, only $3,901 of Plaintiffs' recovery was "judicially sanctioned." That $3,901 recovery related to Plaintiffs' unpaid overtime claims, for which Plaintiffs had specifically requested $156,000 during their settlement negotiations. (Golds Decl., ¶ 5.) This recovery amounts to a mere 2.5% of Plaintiffs' initial request.[14]

In assessing the relative amount of Plaintiffs' recovery, the Court must be careful to distinguish between a truly nominal recovery -- the proverbial peppercorn -- and a recovery of actual compensatory damages, however small they might be. See Morales, 96 F.3d at 362-63. In addition, the Court should look beyond the size of the actual damages recovered, and instead should consider the extent to which a plaintiff's success vindicates important public policies. See id. at 364-65.

That said, where a party seeks a sizeable sum and recovers a significantly more modest amount, it is appropriate to take into account the extent of the party's success relative to its original intentions. The "degree of success obtained" should inform the Court's discretion in determining whether the requested fees are reasonable. See Hensley, 461 U.S. at 437. Notably, this rule has been applied in situations where a plaintiff successfully brings a claim but fails to achieve the full amount of damages sought on that claim. See, e.g., Green v. Torres, 361 F.3d 96 (2d Cir. 2004) (§ 1983 litigation); Diver v. Goddard Memorial Hospital, 783 F.2d 6, 8 (1st Cir. 1986) (FLSA litigation); James v. Wash Depot Holdings, Inc., 489 F. Supp. 2d 1341, 1353 (S.D. Fla. 2007) (FLSA litigation); Gary v. Health Care Svcs.,

---

[14] The Court notes that people generally compromise when negotiating. This involves asking for less than what they believe they are fully entitled to. Plaintiffs apparently believed themselves to be legally entitled to more than the $300,000 (and change) that they requested during negotiations.

<u>Inc.</u>, 744 F. Supp. 277, 278, 280-81 (M.D. Ga. 1990) (FLSA litigation). As one court has put it, the "amount of damages <u>awarded</u>, when compared with the amount of damages <u>requested</u>, may be one measure of how successful the plaintiff was in his or her action, and therefore 'may be taken into account when awarding attorneys' fees to a . . . plaintiff.'" <u>Washington v. Phila. Count Court of Common Pleas</u>, 89 F.3d 1031, 1041-42 (3d Cir. 1996) (§1983 litigation) (quoting <u>Abrams v. Lightolier</u>, 50 F.3d 1204, 1222 (3d Cir. 1995)).

In examining the vast difference between Plaintiffs' initial requests and final recovery, the Court must admit to being troubled by the procedural history of this case.  The Supreme Court has advised that "[a] request for attorney's fees should not result in a second major litigation." <u>Hensley</u>, 461 U.S. at 437.  Plaintiffs have gone a step further than the Supreme Court had even anticipated.  Plaintiffs' request for attorneys' fees is not a "second major litigation" —- it appears to be the <u>central</u> point of their litigation.

Only months after filing their Complaint, Plaintiffs received payments of $8,173.69, which fully discharged the underlying legal liability between Plaintiffs and Defendants on <u>both</u> sets of claims. The $8,173.69 in payments included $1,950.50 in payments on the overtime claims and $6,223.19 on the remaining claims.  (<u>See</u> Golds Decl., ¶ 10.)  But for whatever reason, even after Plaintiffs had recovered the full amount to which they were legally entitled[15] —- $8,173.69 —- they continued to prosecute their claim for unpaid overtime while eventually dropping their claim for the training exercises.

---

[15] Not including liquidated damages claims, which would have potentially doubled Plaintiffs' recovery.

Even if Plaintiffs were underpaid by a total of $125,000 (as is argued by Plaintiffs' counsel, see Pls.' Reply at 12), FLSA clearly provides that underpayments must be offset against overpayments. 29 U.S.C. § 207(h). There was no dispute that Defendants were entitled to offset the overpayments against the underpayments. The only legal dispute about the § 207(h) offsets was whether the offset should be done holistically or on a per-pay-period basis. If offsets are calculated as a whole, Plaintiffs were entitled to $0; if calculated per pay period, Plaintiffs were entitled to $1,950.50. (See Order Denying Defendants' Motion for Partial Summary Judgment, docket no. 63, at 12.)

It is therefore notable that Plaintiffs knew as of August 20, 2008 the amounts to which they were legally entitled after accounting for the § 207(h) offsets. Plaintiffs were certainly aware at this point that these calculations were equal to the amount that Defendants were paying Plaintiffs in their preliminary settlement agreement. (See Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law in Opposition to Defendant City of Victorville's Motion for Partial Summary Judgment, docket no. 59, ¶¶ 4-5, 7-9, 10-11.) Yet Plaintiffs insisted on pursuing their case further.

On a 67-item docket, over 40 items have been filed subsequent to the parties' initial settlement agreement notice. (See docket no. 24.) From the parties' representations, it seems that attorneys' fees have been the only substantial issue preventing that settlement from being finalized. The Court believes that it is proper to take into consideration Plaintiffs' stubborn refusal to settle this case. This is particularly powerful because from each individual Plaintiff's

perspective (as opposed to Plaintiffs' <u>counsel's</u> perspective), this case was essentially settled a long time ago.[16]  <u>See</u> <u>Moriarty v. SVEC</u>, 233 F.3d 955, 967 (7th Cir. 2000) ("Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply.  Attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorney's fee may be less than the lodestar calculation.") (citations omitted); <u>see also</u> <u>Deanda v. Sav. Inv., Inc.</u>, 267 Fed. Appx. 675, 677 (9th Cir. 2008) (citing <u>Moriarty</u>).

Because Plaintiffs recovered only 2.5% of the amount they originally requested; and because they refused to finalize their settlement even when they received confirmatory evidence that their settlement figure constituted the entire claim to which they were entitled; and because nearly two-thirds of the time and effort spent on this case have been motivated by Plaintiffs' desire for a substantial fee award, the Court cannot in good conscience allow Plaintiffs to receive the full amount of the lodestar attorneys' fees calculation.

Plaintiffs' counsel rightly notes that FLSA's attorney's fees provision is intended to vindicate rights that are "hardly . . . insignificant or trivial to the employee[s]" whose incomes have suffered on account of Defendants' actions.  (Pls.' Reply at 6.)  In

---

[16] The individual plaintiffs will hardly be excited when they receive an additional $41.50 per person on account of this Order's liquidated damages award.  This recovery may not have occurred absent plaintiffs' counsel's dogged representation of the case.  It is somewhat confusing, then, that counsel abandoned the training exercise claims, which potentially could have netted the plaintiffs an additional $132.41 per person.
    One might infer from these calculations that Plaintiffs' counsel was more interested in recovering attorneys' fees than in recovering actual and liquidated damages.

addition, it is important that employees have the ability to access effective legal counsel in order to credibly threaten litigation and thereby prevent an employer from underpaying them or otherwise violating their rights under FLSA. Cf. Morales, 96 F.3d at 364-65 (explaining reasonableness of fee award where "litigation served a significant public policy interest").

However, in the present case, no public policy interest was vindicated by the continued prosecution of plaintiffs' claims. The employees' incomes were made whole at an early stage in proceedings. Defendants acknowledged and redressed their mistakes. Plaintiffs' counsel did not need to continue the case beyond June 2008; yet here we are in September 2009, deciding Plaintiffs' motion.

Taking these factors into consideration, and having examined the lodestar reductions used in other cases, the Court believes that a further 65% reduction of Plaintiffs' counsel's fees is appropriate. Plaintiffs recovered $3,901 on the overtime claims after seeking $156,000 during settlement negotiations. The parties filed more than 40 sets of papers —- more than half of the docket —- with practically zero identifiable results for the individual Plaintiffs. Plaintiffs' limited success more than justifies a downward adjustment of counsel's fee recovery. The Court recognizes that a 65% downward adjustment to the lodestar is unusual. However, the unusual nature of this case warrants an unusual result. See, e.g., Diver v. Goddard Memorial Hospital, 783 F.2d 6, 6-8 (1st Cir. 1986) (affirming 95% reduction of requested attorney's fees where plaintiff initially sought $125,000 in damages and ultimately recovered $2,028); James v. Wash Depot Holdings, Inc., 489 F. Supp. 2d 1341, 1353 (S.D. Fla. 2007) (50% reduction of

requested attorney's fees where plaintiff initially sought over $600,000 in damages and ultimately recovered $3,493.62); <u>Garner v. Whitman</u>, 318 F. Supp. 2d 700 (C.D. Ill. 2004) (97% reduction of attorney's fees where plaintiff initially sought over $2,000,000 in damages and ultimately recovered $905.41); <u>Robinson v. Instructional Systems, Inc.</u>, 105 F. Supp. 2d 283 (S.D.N.Y. 2000) (50% downward lodestar adjustment of attorney's fees where plaintiff initially sought $1,000,000 and ultimately recovered $23,000); <u>Gary v. Health Care Services, Inc.</u>, 744 F. Supp. 277 (M.D. Ga. 1990) (60% reduction of attorney's fees where plaintiff initially rejected $6,000 settlement and ultimately recovered $311.36).

### c. Summary of lodestar adjustment

Because Plaintiffs only recovered a small percentage of the amounts they initially sought, because Plaintiffs refused to settle the case even after they knew that they could not substantially improve upon the settlement terms by going to trial, and because Plaintiffs incurred a significant portion of their expenses in an apparent attempt to obtain attorneys' fees, the Court finds it necessary to reduce counsel's remaining fees by 65%.

///

///

///

///

///

///

### 5. Final fee calculation

Plaintiffs' Attorney McGill

    -fee = (\$375/hour X 27.46 hours X 0.35[17])    = \$ 3,604.13

Plaintiffs' Associate Attorneys

    -fee = (\$225/hour X 113.70 hours X 0.35)    = \$ 8,953.88

Total fee = (\$3,604.13 + \$8,953.88)    = \$12,558.01

## IV. CONCLUSION

Plaintiffs are awarded liquidated damages in the amount of \$1,950.50.

Plaintiffs are awarded attorneys' fees in the amount of \$12,558.01.

IT IS SO ORDERED.

DATED: September 23, 2009

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

---

[17] By multiplying the result by 0.35, we effectively achieve a 65% reduction.